<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JAMES DYE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 08-5659 (SRC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

<u>**Chesler, District Judge**</u>

This matter comes before the Court on the appeal by Plaintiff James Dye ("Dye"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled prior to the date last insured under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

**I. BACKGROUND**

The following facts are undisputed. Dye was born in 1964. He has worked as a truck driver. On June 14, 2002, he filed an application for Social Security Disability Insurance benefits, alleging disability since January 1, 2002, when he was diagnosed with HIV infection. His date last insured is December 31, 2004. Plaintiff's claims were denied by the Commissioner initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Michal Lissek (the "ALJ") on November 4, 2003, with supplemental

hearings on August 31, 2004 and December 7, 2004.  The ALJ denied Plaintiff's claim in an unfavorable decision issued January 7, 2005.  After the Appeals Council denied review, Plaintiff appealed the decision to the District Court.  Judge Hochberg concluded that the ALJ "did not adequately consider Plaintiff's pain in his analysis and describe why it was disregarded" and remanded the case for "further review."  (Opinion and Order of August 7, 2006, Civ. Action No. 05-3771).

The ALJ held a remand hearing on February 22, 2007 and issued a partially favorable decision on April 16, 2007, finding Plaintiff disabled with a date of onset of March 24, 2005.  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security.  On November 17, 2008, Plaintiff filed the instant appeal of the Commissioner's decision.

## II.  DISCUSSION

**A.**     **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then

determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.**     **Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if

he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

**C.**     **The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

4

severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled. In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." (Id.) An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his past relevant work, he will not be found disabled under the Act. In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120. If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§ 404.1512(g), 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled. Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy. These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity). These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of

these factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b). When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled. 20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983). The claimant may rebut any finding of fact as to a vocational factor. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523. However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits. See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the decision. See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006). Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format." Id.

    D.    The ALJ's decision

The ALJ found that Plaintiff had been disabled beginning on March 24, 2005, and

Plaintiff has not appealed this finding.  The ALJ also considered whether Plaintiff was disabled under the Social Security Act prior to this date.  As to this issue, the ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had HIV/AIDS infection and peripheral neuropathy with pain and weakness that were "severe" impairments within the meaning of the Regulations; 3) at step three, Plaintiff's impairments did not meet or equal an impairment in the Listings; 4) at step four, prior to March 24, 2005, the Plaintiff did not have the residual functional capacity to perform his past relevant work, but retained the residual functional capacity to perform a full range of sedentary work; and 5) at step five, prior to March 24, 2005, considering the Plaintiff's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that Plaintiff could have performed.  The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, prior to March 24, 2005.

    E.    <u>Plaintiff's Appeal</u>

Plaintiff's date last insured is December 31, 2004.  It is undisputed that, in order to be entitled to disability insurance benefits, Plaintiff needed to establish disability on or before that date.  On appeal, Plaintiff attacks the step four residual functional capacity determination on two grounds: 1) the ALJ failed to give the opinion of a treating physician sufficient weight; and 2) the ALJ failed to properly evaluate the Plaintiff's subjective reports of pain.

Plaintiff first argues that the ALJ's decision fails to state what weight was given to the various pieces of medical evidence.  This objection misses the mark under Third Circuit law, which does not require that the ALJ state the weight given to every piece of evidence:

> Burnett does not require the ALJ to use particular language or adhere to a

> particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.

Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). This Court finds that, in the decision, the ALJ sufficiently explained the findings to permit meaningful review.

Plaintiff next points to the November 2, 2006 "treating source opinion" which, Plaintiff contends, "reduc[es] him to far less-than-sedentary capacity at least since March 4, 2004." (Pl.'s Br. 10.) Careful examination of the document to which Plaintiff points raises questions about the weight it deserves. The document appears to be a form provided by the Commissioner to obtain medical assessments of physical limitations. The document in the record appears to have been signed by "Erin Murphy, P.A." on November 2, 2006. (Tr. 401.) The document states that the assessment pertains to the "period of time from 3/4/04 to 11/30/07." (Id.) Thus, at the outset, this Court notes that the document claims to assess Plaintiff during a period of almost three and three-quarter years, one year of which had not yet happened on the date on which the document states it was signed. "P.A." does not indicate a physician's medical degree, but generally refers to a physician's assistant.

Even setting aside the credibility issue that arises from the use of the 2007 end date – which might reflect simply a minor writing mistake – Plaintiff has not provided a basis to conclude that the document deserves great weight as evidence of Plaintiff's functional capacities in 2004. Plaintiff does not assert – no less offer evidence – that Ms. Murphy treated or observed Plaintiff in 2004. Plaintiff has pointed to nothing in the record before this Court that indicates that Erin Murphy was, in fact, a medical professional who treated Plaintiff, or that she even had any personal knowledge of Plaintiff's functional abilities in 2004. On the present record, this Court can not find more than that Ms. Murphy is an employee who filled out a form, with an

incorrect date, on a date in 2006. This Court finds no basis to conclude that the ALJ failed to give Ms. Murphy's opinion proper weight.

Nor does this Court find, on review, that the ALJ's decision is unsupported by substantial evidence. The file provided to this Court by the Commissioner is over 600 pages long. The ALJ's decision contains statements indicating that Plaintiff's medical records from the Peter Ho clinic were reviewed and considered, and that they did not document motor loss prior to March of 2005. (Tr. 349).

Plaintiff contends that Ms. Murphy's opinion "has the benefit of treatment notes back to the diagnosis of HIV in 2002." (Pl.'s Br. 10.) Yet Plaintiff offers no evidence that Ms. Murphy ever consulted any notes, nor does the record indicate how she drew the inferences reflected on the form, whether by studying notes or otherwise. Nor does Plaintiff point to any significant evidence in those treatment notes that supports Ms. Murphy's statements or that the ALJ disregarded. Plaintiff points to these specific pieces of medical evidence: 1) Plaintiff was prescribed a cane on April 22, 2004; 2) in his report on November 29, 2006, Dr. Rubenstein reported that Plaintiff needed the cane all the time; 3) Plaintiff began treatment with Neurontin on August 4, 2003; and 4) Plaintiff was diagnosed with HIV-related neuropathy in July of 2003. The November 29, 2006 statement about cane use is not relevant to the question of whether Plaintiff was disabled in 2004. The three other pieces of evidence show that Plaintiff did have serious medical problems prior to the date on which he was determined to be disabled, but do not suffice to show that the ALJ's decision is not supported by substantial evidence.

It does appear to be correct that, when the ALJ wrote that "there is no evidence that [the cane] was prescribed by a doctor," the ALJ overlooked the evidence of record that the cane had been prescribed by a doctor. (Tr. 25.) Plaintiff does not even argue, however, that this mistake

10

had a material effect on any of the ALJ's decisions, nor does this Court find it to be significant. In making the step five determination, the ALJ considered that Plaintiff would be capable of only sedentary jobs, thus reflecting a view of Plaintiff's difficulties consistent with the prescription of a cane in April of 2004.

As for the evidence relating to Neurontin and the HIV diagnosis, the ALJ in no way overlooked this evidence. The decision lists similar evidence in detail. (Tr. 21-22.) That the Plaintiff began to suffer from HIV infection earlier than his date last insured is not in dispute. The medical evidence Plaintiff points to raises no serious question about the correctness of the ALJ's determinations about his residual functional capacity or the existence of jobs that the claimant can perform.

Plaintiff also faults the ALJ for not sufficiently questioning Plaintiff at the last hearing about his increasing pain. (Pl.'s Br. 10.) Yet Plaintiff offers neither legal argument supporting the proposition that the failure to ask such questions constitutes reversible error, nor record evidence that such pain was disabling during the period in question. Plaintiff bears the burden of proof of disability, and there has been no showing that the ALJ's determination in this regard is not supported by substantial evidence.

Plaintiff next argues that the ALJ failed to properly evaluate the Plaintiff's subjective complaints of pain. Plaintiff contends that the ALJ should have given these complaints greater weight, "as her [sic] allegations were consistent with the evidence of record." (Pl.'s Br. 14.) Plaintiff has mischaracterized the record. The ALJ considered Plaintiff's subjective reports of pain in the context of the evidence of record and stated:

> At the August 31, 2004 hearing, Dr. Fechner testified that he factored in the claimant's allegations of pain in determining that he could do sedentary work. . . The claimant's statement that he watches television and listens to the radio

11

> suggests that he retains sufficient concentration to function in a work setting despite his pain. There is no medical evidence that the claimant's pain is so great that his concentration has been significantly diminished. In light of the fact that the claimant's HIV has remained stable with treatment I give lesser weight to his allegations of pain and diminished concentration and adopt Dr. Fechner's opinions.

(Tr. 25.) The ALJ explained why she believed that the allegations were not consistent with the evidence of record. Plaintiff has not pointed to any evidence to support the assertion that the ALJ erred in deciding to give the subjective complaints of pain lesser weight. In view of the fact that a medical expert testified that he had considered Plaintiff's reports of pain in arriving at his opinion that Plaintiff retained the capacity to do sedentary work, this Court finds that the ALJ's decision is supported by substantial evidence.

Plaintiff has pointed to no evidence in the record that is even inconsistent with the ALJ's residual functional capacity determination, much less which raises any serious question as to whether the ALJ's determination was supported by substantial evidence.

### III. CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: October 6, 2009

                                                s/ Stanley R. Chesler
                                                STANLEY R. CHESLER, U.S.D.J.